UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DAMONT HAGAN,

           Plaintiff

v.

U/K STEIN, *et al.*,

           Defendants.

CIVIL ACTION NO. 1:22-CV-00868

(MEHALCHICK, J.)

**MEMORANDUM**

Plaintiff Damont Hagan ("Hagan"), a state inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 20). The remaining Defendants are Sergeant Funk, Licensed Psychologist Manager Stein, and Psychology Services Specialist Gross. Before the Court is Defendants' motion (Doc. 45) for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court will deny Defendants' motion.

I.    **BACKGROUND AND PROCEDURAL HISTORY**[1]

Beginning in March of 2020, the DOC made changes to slow the spread of the coronavirus disease 2019 ("COVID-19") within its institutions, including implementing a system wide lockdown across all institutions. (Doc. 50, at 1, ¶ 1; Doc. 67, at 1, ¶ 1). When the

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. M.D. PA. LOCAL RULE OF COURT 56.1. Unless otherwise noted, the factual background herein derives from the parties' statements of material facts. (Doc. 50; Doc. 67).

system wide lockdown ended, inmates who contracted COVID-19 were housed in isolation in the infirmary. (Doc. 50, at 1, ¶ 2; Doc. 67, at 1, ¶ 2). When bed capacity in the infirmary was exceeded, D Block at the State Correctional Institution at Camp Hill, Pennsylvania ("SCI-Camp Hill") was used as an additional quarantine unit for medical isolation purposes. (Doc. 50, at 1, ¶ 3; Doc. 67, at 1, ¶ 3).

Hagan was housed at SCI-Camp Hill in February 2021. (Doc. 50, at 1, ¶ 4; Doc. 67, at 1, ¶ 4). Elicia Stein was a Licensed Psychologist Manager at SCI-Camp Hill in February 2021. (Doc. 50, at 2, ¶ 7; Doc. 67, at 1, ¶ 7). Thaddeus Gross was a Psychology Services Specialist at SCI-Camp Hill in February 2021. (Doc. 50, at 2, ¶ 8; Doc. 67, at 1, ¶ 8). Sergeant Funk was a Corrections Officer 2 at SCI-Camp Hill in February 2021. (Doc. 50, at 2, ¶ 9; Doc. 67, at 1, ¶ 9).

Hagan had no issues with the conditions he experienced when all institutions were on a system wide lockdown for weeks at the beginning of the pandemic. (Doc. 50, at 2, ¶ 10; Doc. 67, at 1, ¶ 10). Additionally, Hagan had no issues with the conditions he experienced when he contracted COVID-19 and was quarantined on blocks other than D Block. (Doc. 50, at 2, ¶ 10; Doc. 67, at 1, ¶ 10).

Hagan contracted COVID-19 and was sent to D Block for a two-week quarantine. (Doc. 50, at 2, ¶ 11; Doc. 67, at 1, ¶ 11). Defendants maintain that when Hagan was escorted to D Block, Sergeant Funk directed him to a cell that was assigned to Hagan from a predetermined list created by someone other than Sergeant Funk. (Doc. 50, at 2-3, ¶ 12). Defendants maintain further that Sergeant Funk had no involvement with what occurred prior to inmates being placed on D Block. (Doc. 50, at 2-3, ¶ 12). In response, Hagan contends that Sergeant Funk controlled inmate placement and "personally created a list that identified

cells that were 'filthy' and used these cells to put the inmates in…who wished to file grievances." (Doc. 67, at 1, ¶ 12). Defendants assert that D Block was still considered a general population housing unit when it was used for quarantine purposes. (Doc. 50, at 3, ¶ 13). Hagan contends that due to the nature of the quarantine, inmates were in their cells for 23 hours per day, essentially resulting in solitary confinement. (Doc. 67, at 1, ¶ 3). On a weekly and sometimes daily basis throughout the pandemic, psychology staff conducted cell door contacts to check on all inmates in the quarantine units during their rounds. (Doc. 50, at 3, ¶ 14). Hagan asserts that he was placed in quarantine on February 25, 2021, and was checked by psychology staff on March 3, 2021, March 8, 2021, and March 9, 2021. (Doc. 67, at 2, ¶ 14).

On March 3, 2021, Defendants Stein and Gross met with Hagan and put in a psychiatry referral that same day. (Doc. 50, at 3, ¶ 15; Doc. 67, at 2, ¶ 15). Hagan asserts that this referral was considered "non-emergent." (Doc. 67, at 2, ¶ 15). Defendants maintain that Hagan was seen by psychiatry the following day, and it was reported that Hagan recanted his story about a suicide attempt when talking to psychiatry staff. (Doc. 50, at 3, ¶ 16; Doc. 67, at 2, ¶ 16). Hagan denies that he recanted any story. (Doc. 67, at 2, ¶ 16). Staff confirmed that Hagan was seen by psychology and psychiatry staff according to policy standards during his placement on D Block. (Doc. 50, at 3, ¶ 17; Doc. 67, at 2, ¶ 17). Hagan avers that psychology staff should have seen him daily. (Doc. 67, at 2, ¶ 17).

Defendants further assert that Hagan's claims of substandard conditions in the cells on D Block were investigated and found to be unsubstantiated. (Doc. 50, at 3, ¶ 18). Hagan counters that "[a]t no time did any staff come to [his] cell during his stay on D-block." (Doc. 67, at 2, ¶ 18).

3

**II.    LEGAL STANDARDS**

    A.  MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *Morrison v. United States*, No. 1:20-CV-01571, 2021 WL 4192086, at *3 (M.D. Pa. Sept. 15, 2021) (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that *pro se* parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants")).

A federal court should grant summary judgment "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. See *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES,* 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an

unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment."). With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

 B. 42 U.S.C. SECTION 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

**III.** **DISCUSSION**

The sole remaining claim in this action is a First Amendment retaliation claim against Defendants Funk, Stein, and Gross. The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. CONST. amend I. These rights are lessened, but not

extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See *Turner v. Safley*, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000).

To prevail on a retaliation claim, Hagan bears the burden of demonstrating three elements. First, he must prove that he was engaged in a constitutionally protected activity. See *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, he must demonstrate that he "suffered some 'adverse action' at the hands of the prison officials." *Rauser*, 241 F.3d at 333 (quoting *Allah*, 229 F.3d at 225). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Allah*, 229 F.3d at 225 (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Significantly, the effect of the adverse action must be more than *de minimis*. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). Third, Hagan is required to show that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take action against him. *Rauser*, 241 F.3d at 333 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials can make this showing, it defeats the retaliation claim. See *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

7

A. DEFENDANT FUNK

Hagan contends that Defendant Funk placed him in cell 51[2] on D Block in retaliation for requesting a grievance to air his complaints about staff being responsible for spreading COVID-19. Hagan's announcement of his intent to file a grievance constitutes constitutionally protected conduct. *See Stewart v. Varano*, 601 F. App'x 107, 111 (3d Cir. 2015) (not precedential) (stating intention to grieve satisfied first element of retaliation claim). Additionally, Hagan's complaints regarding prison staff may be considered constitutionally protected activity. *See Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282-83 (3d Cir. 2004) ("All speech is protected by the First Amendment except narrow categories that are entitled to no protection, including obscenity and 'fighting words.'"). He has thus satisfied the first *Rauser* prong.

With respect to the second prong of the *Rauser* test, depending on the circumstances, a prisoner's transfer to an undesirable cell block may represent an adverse action for purposes of a retaliation claim. *See, e.g.*, *Allah*, 229 F.3d at 225-26 (holding that continued placement in administrative confinement with reduced privileges could be an adverse action). Hagan asserts that his cell on D Block had inadequate airflow, inadequate space to exercise, was filthy and lacked cleaning supplies, was extremely hot, had no working electrical outlet, was infested with rodents, and that he was placed on the top tier while using crutches, and was confined to his cell for 23 hours per day. (Doc. 20, at 4-5, ¶ 18; Doc. 66, at 4-5; Doc. 68, at 2-3, ¶¶ 4-6). Hagan conclusively claims that these conditions amounted to restricted housing.

---

[2] Hagan primarily states that he was placed in cell 51 on D Block, though he also states that he was placed in cell 50 on D Block. (*See* Doc. 66, at 4; Doc. 68-1, at 2, ¶¶ 4-5; Doc. 68-2, at 13). This appears to be a mere typographical error, and the Court assumes that Hagan was housed in cell 51 on D Block at all relevant times.

Hagan has presented evidence that his cell on D Block was less desirable than his previous location and has demonstrated that a factfinder could conclude that this transfer was sufficient to deter a person of ordinary firmness from exercising their First Amendment rights. Hagan has met prong two.

The Court must next determine whether there is a causal connection between the exercise of the constitutional right and the adverse action. Hagan has established an unusually suggestive temporal proximity between his protected conduct and Defendant Funk's adverse action to support an inference of retaliatory motive—Defendant Funk purportedly placed Hagan in cell 51 on D Block on the very day that Hagan announced his intention to grieve his allegation that staff transmitted COVID-19 to inmates. Defendants argue that Funk was not substantially motivated by Hagan's request to file a grievance against other staff members. (Doc. 51, at 11). However, there is evidence that Funk placed Hagan, as well as other inmates, in certain cells on D Block after they requested grievance forms. (Doc. 68, at 2-3; Doc. 68, at 6-9; Doc. 68, at 11-12; Doc. 68, at 17-18). Hagan has satisfied the third *Rauser* prong.

Assuming that causation exists, Defendants invoke the same decision defense. They argue that Funk would have made the same decision even in the absence of the protected activity, i.e., Hagan's complaint about prison staff and request to file a grievance. (Doc. 51, at 11-12). Based on the record, the Court concludes that there is a genuine dispute as to whether Defendant Funk would have assigned Hagan to cell 51 on D Block, even in the absence of Hagan's protected conduct. Although Defendants argue that Hagan was already assigned to the cell block by other staff members and Funk's duties only involved directing inmates to their pre-assigned cells, Hagan has presented evidence disputing Defendants' position. (Doc. 49-5, at 2, ¶ 4; Doc. 68). Specifically, Hagan has submitted declarations from

fellow inmates who attest that: (1) although inmates were assigned to D Block, they were not assigned a specific cell until they spoke to Defendant Funk upon entry to the housing block; (2) when Defendant Funk was directing inmates to their cells on D Block, he assigned inmates to cells marked "filthy" when they voiced their intent to file a grievance; (3) Defendant Funk reassigned inmates to a more desirable housing block when they retracted their intent to file a grievance; and (4) there were many vacant cells on more desirable housing blocks. (Doc. 68, at 6-9; Doc. 68, at 11-12; Doc. 68, at 17-18). In light of the evidence in the record and recognizing that all disputed facts must be viewed in the light most favorable to Hagan and all reasonable inferences must be drawn in his favor, there is sufficient evidence for a reasonable factfinder to conclude that Defendant Funk acted with retaliatory intent. The Court will deny the motion for summary judgment with respect to the retaliation claim against Defendant Funk.

B. DEFENDANTS STEIN AND GROSS

Hagan next asserts that Defendants Stein and Gross falsified his mental health records in retaliation for filing grievances, informal complaints, and verbal threats to file a lawsuit. The filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity.[3] *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Hagan has met prong one of the *Rauser* test.

Moving to the second *Rauser* prong, Hagan asserts that because Defendants Stein and Gross misstated their notes in his medical records, he was left in a cell that allowed him to

---

[3] Because Hagan did file a grievance, the Court need not decide whether the threat to file a lawsuit, standing alone, amounts to protected activity. *See DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010) (not precedential) ("assuming without deciding that threatening to file a lawsuit is constitutionally protected conduct…").

engage in self-mutilation. (Doc. 66, at 9-10; Doc. 68-1, at 2-3). Falsifying medical records, which in turn leads to an inmate with mental illness being left alone in a cell to harm himself, may constitute adverse action "sufficient to deter a person of ordinary firmness from exercising his [First Amendment] rights." *Rauser,* 241 F.3d at 333. However, the parties largely dispute the material facts relevant to this claim. By way of background, on March 3, 2021, Hagan purportedly informed Defendants Stein and Gross that he attempted suicide on February 27, 2021. (Doc. 66, at 9-10; Doc. 68-1, at 2-3). Despite this report, Hagan asserts that Defendants Stein and Gross indicated in his records that he was not suicidal, thus leaving him in a cell with several self-mutilating objects, which he used to harm himself. (Doc. 44-1, Declaration of Damont Hagan, Notes of Transcript, 33:11-35:22; Doc. 66, at 9-10). The Mental Health Contact Note dated March 3, 2021, reveals that Defendants Stein and Gross treated Hagan on that date and that Hagan denied any suicidal thoughts or plans. (Doc. 68-1, at 13-18; Doc. 68-1, at 35). The Note also reveals that Defendant Stein made a non-emergent referral to psychiatry.[4] (Doc. 68-1, at 15). There is a genuine dispute as to whether Hagan informed Stein and Gross that he was suicidal, and whether the March 3, 2021 Mental Health Contact Note contains accurate and truthful information regarding Hagan's mental state. As such, the Court finds the presence of disputed facts which should be resolved by a jury and not this Court on summary judgment. Further, in light of this factual dispute related to adverse action, the Court will also send to a jury the question of whether Hagan has established a causal connection.

---

[4]The record contains conflicting documents as to when Hagan was seen by psychiatry staff. The DOC Inmate Cumulative Adjustment Record reveals that psychiatry staff treated Hagan on March 8, 2021, on D Block. (Doc. 68-1, at 35). The record also contains grievance documents that indicate psychiatry staff treated Hagan on March 4, 2021. (Doc. 44-3, at 2; Doc. 44-3, at 4).

C. QUALIFIED IMMUNITY

Defendants also argue that qualified immunity shields Funk, Stein, and Gross from Hagan's claims. (Doc. 51, at 22-24). Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. *Pearson v. Callahan*, 555 U.S. 223, 244-45 (2009). No liability will attach if a reasonable actor could have believed the challenged conduct was consonant with settled law. *Pearson*, 555 U.S. at 244-45; *see Springer v. Henry*, 435 F.3d 268, 280 (3d Cir. 2006). The burden to establish qualified immunity rests with the defendant claiming its protection. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989)).

A court evaluating a claim of qualified immunity considers a two-pronged inquiry: whether, based on the facts, a constitutional right has been violated and, if so, whether the right was "clearly established" at the time of the alleged violation. *See Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (quoting *Pearson*, 555 U.S. at 232). The Court has determined that Hagan has adequately established a constitutional violation in the form of a retaliation claim. Defendants argue that, even if the Court concludes that there was a constitutional violation, the rights at issue were not clearly established. (Doc. 51, at 23-24).

For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Although earlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. *Hope*, 536 U.S. at 741. The Supreme Court of the United States has cautioned that courts must not cast the right at issue too

narrowly; indeed, the Court has said "'[w]e do not require a case directly on point' before concluding that the law is clearly established." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (*per curiam*) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). At the same time, the Court must take care not to define the right at issue "at a high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017) (*per curiam*) (quoting *Ashcroft*, 563 U.S. at 742). The Supreme Court has explained that to strike the appropriate balance, "clearly established law must be 'particularized' to the facts of the case." *White*, 580 U.S. at 79 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Based on the disputed evidence as to whether Defendant Funk acted with retaliatory intent and whether Hagan suffered adverse action at the hands of Defendants Stein and Gross, the Court finds that Defendants are not entitled to qualified immunity at this time.

### IV. CONCLUSION

The Court will deny Defendants' Rule 56 motion. (Doc. 45). An appropriate Order shall issue.

Dated: July 9, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

13